We'll proceed to the 6th case, United States v. House. Mr. Patton. As I read the brief, Mr. Patton, your only brief is on the sentencing. That's correct. And in fact, with just one portion of the sentencing, Your Honor, the only claim, the only challenge we make is to the three-level enhancement finding that Mr. House was a manager or supervisor. And I think we went under any standard of review and whether or not you have to show that he supervised a participant or not. But I do think it would be important for the court to clarify this court's case law on whether or not you have to actually supervise a participant to ever get the enhancement. The definition of supervision is what you're talking about. Yes. What constitutes supervising? He did not supervise anyone, and the district court did not find that he supervised anyone. She specifically did not find that. She found that he helped plan the scheme. And by the way, she did not find that he thought up of the scheme the way the government said in the brief, the district court specifically. She didn't find that he was in charge? No. She just found that he helped design the scheme, which he did. She found that he was important to the commission of the offense, which, of course, he was. All the participants were important. Without the people recruiting the borrowers, it couldn't work. Without Ms. Williams, who was the cooperating defendant, creating the false paperwork on the computer to be submitted, it couldn't have worked. And certainly without Mr. House, it couldn't have worked. We don't dispute that. She said that Mr. House was the one that received the largest total sum of money from the offense, which is true. He did. He got the largest raw dollar amount. But as we explained in our briefs, percentage-wise, he got the same percentage cut from each of the transactions that everybody else got. It's just that because he was the car dealer and this scheme involved fraudulent cars, he had to be involved in every one because you had to have the car. And in fact, the assistant U.S. attorney who tried the case made this point at sentencing. It's on page 20 of the sentencing transcript. He literally said, he's like, yeah, Mr. House made the most money, but he said he did that because he did it by, quote, more money than anybody else because he made money on a volume basis. So it's not that the application note says one thing that could distinguish an organizer leader from a manager supervisor is a claim to a larger share of the fruits. Mr. House never said he claimed that he got a larger share from any transaction. He was just involved in more transactions. So look, we're not questioning that he was guilty and that he was going to get a sentence. And I think what's really interesting about this case is if you look at the pre-sentence report and then you look at the government's version of the offense that they submitted to the probation office, they didn't say that there should be any increase for a role in the offense. Their version that they submitted to the pre-sentence report writer was that Mr. House should not get any role enhancement and that he should just get the base level of 7 plus 16 for the amount of the loss, plus 2 for more than 10 victims, plus 2 for sophisticated means. We agree with that. And that was the position they took. It was the probation office that recommended a 4 level enhancement. The judge said the government then said, all right, well, we'll say we think a 3 at the sentencing hearing. They said, well, we think a 3 instead of a 4. But I think part of the confusion is, and I'll tell you, there are cases from this court that say you don't have to actually supervise a person to get this enhancement. If you follow every one of those cases back, you go to Westlaw and you click on the case that it cites, then you click on the case that it cites, it takes you back to two of this court's cases, United States v. Skinner and United States v. Riviero. They were both decided in 1993, but before November 1st of 1993. On November 1st of 1993, a new application note was added to Section 3B1.1. It was Application Note 2. And the Sentencing Commission, when they gave the explanation of why they were doing the application note, they said there's a split in the circuits about whether or not to get the role enhancement,  or if you can get it just because you were high up in the scheme or you were really involved in the scheme. And they said there's some circuits that go one way. The case that they cited as the minority view that said you don't have to supervise somebody was a Fourth Circuit case named Chambers that said the defendant may be a manager even though he did not directly supervise other persons. And the Sentencing Commission said, we're rejecting that. That's what we're not. That's what we're saying is the wrong side of the circuit split. Well, then the very next case that this court had on the issue was U.S. v. Phones. And U.S. v. Phones said, hey, we were one of the circuits that said you don't have to directly participate. And they cited Skinner, and they cited Riviero, and they cited a case, United States v. Carson, from this court, where it literally says in Carson, we agree with the Fourth Circuit that control over another can be enough. Or excuse me, we agree with the Fourth Circuit that it may be enough that the defendant orchestrated or simply coordinated other activities, citing the Fourth Circuit in Chambers, which is the case that the Sentencing Commission said was wrong. And Phones then quite properly said, because Note 2 requires that a defendant have control over at least one other participant in order to be subject to an offense level increase under Section 3B1.1, it effectively nullifies the law of the Seventh Circuit because now you have to have a participant. But what's happened, and if you go on Westlaw and you look at Skinner and you look at Carson and you look at Riviero, they have a red flag saying no longer good law, superseded by statute, as said in U.S. v. Phones. Now, I understand Westlaw doesn't decide if one of your cases has been overruled, but it's a pretty good sign that when you go back to all those, you have to, and as you say, Judge, the whole idea of being a manager supervisor is you actually are supervising someone. And the government says, well, the government takes the position of no, you don't, but even if you do, Mr. House supervised Ms. Williams. But that just doesn't hold any water. Number one, they didn't argue that to the district court at all, and the district court did not find that Mr. House supervised Ms. Williams. The government claims that Ms. Williams, that Mr. House, one of the ways he supervised her is that Mr. House came up with the idea for this scheme. But they cite to the right pages of Ms. Williams' testimony, except Ms. Williams testified that she was the one who raised the issue with Mr. House. Mr. House was trying to get a loan for himself with Ms. Williams' help. It didn't work out. And then Ms. Williams said she brought up this idea of car loans that then get converted to personal loans. In paragraph 24 of the PSR, the PSR writer states, quote, Agent Dobrovitz, who was the FBI lead agent, could not advise the undersigned which defendant, Mr. House, or Ms. Williams devised the incident scheme. And the government's closing. Look, she cooperated. Mm-hmm. He did not. Sure. She cooperated. Oh, yeah. She got four months. Mr. House isn't getting four months, even if he doesn't get the three levels. I mean, his range is 78 to 108 months. I'm not at all saying that he should get the same sentence as Ms. Williams. I'm just saying the government in its brief to this court says, well, Mr. House came up with the idea. They told the jury, even in the closing arguments, that, quote, both of them came up with the idea of doing these auto loans for cars that were never sold. Ms. Williams testified that she created the fraudulent purchase contracts. She went on the Internet, found a template. You're in your own prototype. And then she would fill in. She'd get the VIN number, make and model of the car, but she would, say, make up the down payment amount. She would make up the taxes amount. She'd make up the name of the salesman and all of that stuff and then send it to Mr. House. She helped create the second bank account. When she created that bank account, who told her to create the bank account? And this is the testimony was they both got concerned because one of them bounced so that they needed to get another account. Ms. Williams said, I got a guy in California. The statements for that account got sent to Ms. Williams in Georgia, not to Mr. House. Mr. House couldn't withdraw money from that account, and that was testified to by the government's own summary witness. I would like to save a few moments for rebuttal. Thank you, Mr. Patel. Mr. Sewell. Good morning, Your Honor. As it may have pleased the court, the district court correctly applied the three-level enhancement when it correctly found that the defendant volunteered the use of his company to organize and operate this fraud, that he often had the final say in doling out the money, and that he used that say to keep the most amount of money for himself. The defendant was therefore more culpable than some of the other participants in the scheme, and he therefore earned this enhancement. In so finding, the district court properly analyzed several of the factors found in Note 4, which all reasonably show that the defendant organized other people. With respect to the degree of participation in planning and organizing the offense, as well as the nature of his participation in committing the offense, the district court properly found that he organized the aspects of the fraud that touched on his business, which was really the beating heart of this fraud. He volunteered his company to apply for these fraudulent loans. He obtained the necessary vehicle information, the VINs, the makes, the models, and then passed them along to other people so they could give their purchase orders an air of legitimacy and thereby fool the victim companies. He also negotiated a large number of checks that were made payable to his business, deposited them, cashed them, and then was largely responsible on many occasions for doling them out to others. With respect to a third factor found in Note 4, which is the share of the fruits of the crime, the district court correctly found that he kept the most money, more than any of his co-schemers and co-defendants because he dealt with the most amount of loans, and that is a key fact that goes to show his relative culpability because when it is a volume business, the person that does the most volume is much more culpable than somebody who does the least amount of volume. Now, all these facts show organization of others because by planning the scheme, by volunteering his company to serve as a front company, he gave a blueprint. He organized people under one cohesive fraud scheme as opposed to everyone running their own individual scam. By providing the necessary vehicle and VIN information, he organized people by giving them specific instructions, again, on how to fill out these purchase orders in a way that would pass muster with the victims. And then by negotiating these checks, by depositing them into these accounts, he was acting as a paymaster. He was organizing them in that fashion, which meant that he had the ability to control where the money went, which, again, he frequently used to pay his co-schemers, thereby incentivizing them to continue to participate in the fraud. And finally, with respect to the third factor, which is his share of the profits, his ability to keep the most amount of money shows that he was above others in the hierarchy, and that shows that he was the one doing the organizing rather than the other way around. These are all facts that illustrate his greater culpability than others involved in the scheme, which, again, must include the lowest level of the co-schemers, which are the borrowers themselves. These are facts that the cases have found to be significant in affirming the enhancement, and so the district court correctly applied it here. This court should continue to do what it did in the long line of cases, holding that all of the factors in Note 4 are useful and relevant in assessing whether this enhancement even applies. This court should continue to follow those cases which all hold that no single factor is an absolute requirement, that the presence or absence of any one factor is not dispositive in this analysis. It should continue to do what it did in Dade, what it most recently did in United States v. Oliver, and look to all the factors rather than just focusing on mere control over another person, because, again, there are many ways to measure relative culpability other than that simple seventh factor of the analysis. With respect to what the district court found in the sentencing, the district court was not required to make a finding on control, because, again, based on this long line of cases that hold that all these factors are significant, and additionally, the defendant himself never made the argument that he was required to have controlled another person to receive the enhancement of sentencing, and so the district court simply did not have the occasion to make the finding. So for all those reasons, the government asked this court to affirm the defendant's sentence and to hew closely to that long line of cases that holds that all the factors in Note 7 are important and not just control. Mr. Hsu, I really appreciate your laying out the case as you have, but what are we to do with the language of the district judge? That's of some concern to me. I mean, it seems she comes up with a different approach, doesn't she? I mean, I understand what her final sentence is, but she has language which suggests that he's a participant, obviously, and heavily involved, as they all were, but seemed to have language that speaks to him not being the leader that you would have us accept. Well, I think at sentencing, her factual findings all go to the three out of the seven factors in Note 4. I think that she weighed those factors and that she came up with a reasonable conclusion that was based on all the trial evidence that she presided over. But didn't she reject the PSR finding? Yes, Your Honor, in that the PSR actually requested an even higher enhancement than what the government saw and what the judge saw. Yeah, and the way you laid it out, it almost would justify a higher one. And she rejected that. That's true in that she found that in the hierarchy there was no clear leader or organizer, but there were people like the defendant, probably like Mr. Hughes, who were more culpable than other members in the scheme and therefore deserved the three-level enhancement rather than the four-level enhancement. Some of the language the district court used is consistent with the split of responsibility, which cases like Rosales hold is not inconsistent with a leadership enhancement or a manager-supervisor enhancement because there are many schemes in which there is delegation. There are many schemes in which there is a division of labor based on a person's respective talents. And as a result, her language, her findings at sentencing, is not inconsistent with the application of the three-level enhancement. Thank you. Thank you very much, Your Honor. Mr. Patton. Section 3B1.1 is not called the person's culpability for the offense. It's called role in the offense. Of course there are many different ways to measure culpability. Did you use sophisticated means? Did you use a vulnerable victim? There are all kinds of different aggravating and mitigating factors that deal with culpability. 3B1.1 deals with a very specific type of one, which is did you supervise someone? Can we have a situation where you have serious involvement by several people, Mr. Patton, and at times you're supervising? You're not the supervisor throughout the whole vignette, you know? Well, I would assume that you can, but that's not what you had here. The government's argument is basically if you have a large enough fraud dollar amount and enough people involved, by God, there has to have been somebody who was a manager or supervisor. I mean, that's what it comes down to is under their version, every single case there would have to be somebody who's a manager or supervisor. It's like the intelligent creation. Yes, yes. It's just, well, it has to be because we're here. And it's just that's not the way it is. And, look, again, Mr. House was guilty. He was found guilty. He got an appropriate increase because of the amount of the loss. That's based on one measure of culpability. We understand your thought. I know. I figure you guys just want to stick around for a little longer, though. Have a good day. Thank you. Thank you, Mr. Patton. Thank you, Mr. Hsu. This has been a raging case that's taken under advisement, and the court will stand at recess. All right.